**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | | |
|---|---|---|
| **PATRICIA BLEDSOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 08-2843-STA** |
| | ) | |
| **STATE OF TENNESSEE,** | ) | |
| **DEPARTMENT OF MENTAL** | ) | |
| **HEALTH and DEVELOPMENTAL** | ) | |
| **DISABILITIES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
_____

Before the Court is Defendants' Motion for Summary Judgment (D.E. # 57) filed on

February 10, 2010.  Plaintiff has responded in opposition to Defendants' Motion, and Defendants

have filed a reply brief.[1]  For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

The following facts are not in dispute for purposes of this Motion unless otherwise noted.

At all times relevant, Plaintiff Patricia Bledsoe ("Plaintiff") was a female, African-American

employee of the State of Tennessee.  (Defs.' Statement of Undisputed Facts ¶ 1)  Plaintiff was

hired as a secretary at the Memphis Mental Health Institute ("MMHI") in 2000.  (*Id*. ¶ 7)

Plaintiff was promoted to Administrative Secretary in 2001.  (*Id*. ¶ 8) According to Defendant,

---

[1] The Court notes that Plaintiff's response brief was signed and filed by an attorney who
has not appeared in this case and is otherwise not counsel of record for Plaintiff.

1

Plaintiff alleges she was never promoted to Administrative Assistant 1 because MMHI management began to segregate African-American employees into the secretary classification in spring 2003.  (*Id*. ¶ 42)  Plaintiff disputes this statement by asserting that African-American secretaries were being promoted when MMHI had an African-American member of the executive counsel.[2]

Scott Lindsey ("Lindsey") was assigned by the Tennessee Department of Mental Health to investigate Plaintiff's complaints about unlawful discriminatory practices at MMHI.  (*Id*. ¶ 2.)  Lindsey is an African-American male.  (*Id*. ¶ 4)  Plaintiff alleges that Lindsey purposely worked with Defendants Sonny Slate ("Slate") and Larry Ventura ("Ventura") to discredit her and her attempts to expose the discriminatory practices of Slate, Ventura, MMHI management and the management of Department of Mental Health and Developmental Disabilities.  (*Id*. ¶ 3)  According to Lindsey's report, there were four Administrative Assistants 1 appointed or promoted since Ventura and Slate were hired in October 2003 and February 2004, respectively.  (*Id*. ¶ 48)  Three of the four were African-Americans like Plaintiff.  (*Id*.)  Cynthia B. Jones is an African-American female who was promoted to Administrative Assistant 1 at MMHI in October 2007.  (*Id*. ¶ 5) Jones worked for Slate.  (*Id*. ¶ 58)  Myron McWashington is an African-American male who was promoted to Administrative Assistant 1 at MMHI in late 2005.  (*Id*. ¶ 6)  Plaintiff contends that both McWashington and Jones were hired by African-American members of the MMHI executive council, and that all three of the African-Americans hired for the Administrative Assistant 1 positions were new to state government.

---

[2] The "executive counsel" is not otherwise defined or explained in the parties' briefs or the record before the Court.

Lindsey's report also indicated that Plaintiff was not on the list of eligible employees with respect to three of the appointments and was interviewed but not selected in the final instance.  (*Id*. ¶ 49)  Plaintiff disputes this statement and asserts that she was on the list of eligible employees in 2006, when the register was opened twice and Linda Johnson was ultimately hired.

During her employment with MMHI, Plaintiff never received a poor job performance evaluation from Slate or Ventura.  (*Id*. ¶ 38)  Slate and Ventura signed off on Plaintiff's 2004 job performance evaluation giving her the highest possible rating of "exceptional." (Id. ¶ 37)  In fact, Plaintiff had no formal disciplinary actions prior to the disciplinary actions she received in 2006 and 2008.  (*Id*. ¶ 39)  On March 17, 2006, Plaintiff received a written disciplinary warning for breaching employee confidentiality by showing another MMHI employee her employee performance review before the other employee's supervisor had shown it to her.  (*Id*. ¶ 14).  Plaintiff initially lied to Slate and claimed that the fellow employee accidentally noticed the review on Plaintiff's desk.  (*Id*. ¶ 15).  Slate found Plaintiff's dishonesty regarding the incident to be disturbing.  (*Id*. ¶ 16).  Then on September 25, 2008, Plaintiff admitted that she was sleeping while at work and was issued a written warning by her supervisor Lisa A. Daniel.  (*Id*. ¶ 36)  In a separate disciplinary matter, Slate admonished Plaintiff for selling stolen cigarettes off the back dock of MMHI, which Plaintiff admitted and apologized.  (*Id*. ¶ 50)  Plaintiff states that she only reported another person who was selling and denies that she was selling the cigarettes.  However, Plaintiff later admits that Ventura advised her not to sell cigarettes on MMHI grounds as that was in violation of the "no solicitation" policy of the hospital.  In another incident, Slate counseled Plaintiff for selling perfume at work, which she also admitted and apologized. (*Id*. ¶

51)

There were several department heads who did not want Plaintiff to have anything to do with their departments.  (*Id.* ¶ 59)  Plaintiff states that she was not aware of this opinion among department heads and contends that department heads informed her that they would not aid Slate and Ventura's attempts to harass Plaintiff.  Slate did not trust Plaintiff one hundred percent.  (*Id.* ¶ 60)  Ventura and Slate made a concerted effort to assist Plaintiff into becoming a valuable employee at MMHI, even to the extent of trying to support her in her personal issues, but they were not successful.  (*Id.* ¶ 64) Plaintiff disputes this assertion because both Ventura and Slate deceived Plaintiff in an effort to demote her.  Both also failed to give Plaintiff a yearly performance evaluation in 2005, 2006, and 2007.

Plaintiff has a history of substance abuse.  As of August 2007, Plaintiff had received treatment for alcohol abuse nine times.  (*Id.* ¶ 21).  For example, in October 2002, Plaintiff was treated at the Memphis Veterans Administration Medical Center ("VAMC") for a relapse of alcohol abuse and crack usage after two years of sobriety.  (*Id.* ¶ 22)  At that time, Plaintiff was employed at MMHI, and her supervisor was Earl Chambers who is an African-American male.  (*Id.* ¶ 23)

Plaintiff also has history of psychiatric problems.  Plaintiff was first diagnosed with mental health issues in August 2007.  (*Id.* ¶ 12) During an inpatient admission, Plaintiff was diagnosed with generalized severe anxiety, depression, and substance abuse of alcohol and crack cocaine.  (*Id.*)  Plaintiff continued to experience problems in 2008.  On October 8, 2008, Plaintiff was admitted to the VAMC after experiencing suicidal thoughts and ingesting ten Tylenol tablets.  (*Id.* ¶ 24)  At that time, Plaintiff reported regularly ingesting large amounts of BC

powder, drinking a quart or more of beer daily, and smoking crack as often a she could buy it, which was daily by that time.  (*Id.* ¶ 25)  Also at that time, Plaintiff was unstable and had been off of her psychiatric medications and had not seen her physicians for six months.  (*Id.* ¶ 26)  Plaintiff reported that the source of her stress was dealing with a cancer diagnosis in the family, coping with a death in the family, and job and marriage issues.  (*Id.* ¶ 27)  Nursing notes from Plaintiff's October 2008 hospital stay described Plaintiff as "somewhat delusional and paranoid." (*Id.* ¶ 28)   Plaintiff's history, as she reported it during her October 2008 admission, included mental and verbal abuse; an attempted rape while in the Army from 1979 to1982; alcohol, cocaine and marijuana abuse; workplace conflict; and concern for her two sons.  (*Id.* ¶ 29) Plaintiff believed that this combination of stressors led to her suicide attempt.  (*Id.*)  In December 2008 Plaintiff informed her supervisor that her thinking was confused and that she was paranoid and afraid.  (*Id.* ¶ 17a).

    Plaintiff informed Slate that she was a recovering substance abuser.  (*Id.* ¶ 52) Plaintiff told Slate that her personal issues were affecting her job, which he agrees was sometimes the case.  (*Id.* ¶ 57)  There were many occasions when Slate suspected Plaintiff was reporting to work under the influence due to her personality changes.  (*Id.* ¶ 53)  Plaintiff states that Slate never counseled, reprimanded, or tested her for suspected substance use.  There were also occasions when Plaintiff admitted she was under the influence so there was no need to have her drug tested.  (*Id.* ¶ 54)  Plaintiff denies this statement.  In 2005 Slate reported to Ventura that Plaintiff came to work under the influence of cocaine and was having an issue with alcohol and prescription drugs.  (*Id.* ¶ 55).  Plaintiff denies that she came to work under the influence and states that she was never provided an interim review or yearly evaluation to make her aware of

these concerns.  Slate further told Ventura on more than one occasion that Plaintiff came to work under the influence and that she was involved with the Employee Assistance Program.  (*Id*. ¶ 56) Plaintiff denies that she participated in the Employee Assistance Program in 2005.  Ventura observed Plaintiff  sleeping in her office on several occasions, which led him to believe she might be impaired.  (*Id*. ¶ 62)

Plaintiff also experienced attendance issues.  In 2005 Plaintiff was absent from work for a total of 23.02 days.  (*Id*. ¶ 45)  In 2006 Plaintiff was absent from work for a total of 49.9 days. (*Id*. ¶ 46)  In 2007, Plaintiff was absent from work on sick leave for a total of 58 days.  (*Id*. ¶ 35) According to Claudette Seymour, Plaintiff was absent from work in 2007 for a total of 63.17 days.  (*Id*. ¶ 47)

In 2009, Plaintiff's physician provided a letter stating that Plaintiff was unable to work due to emotional instability.  (*Id*. ¶ 9).  Plaintiff resigned from her employment position with MMHI in June 2009.  (*Id*. ¶ 10).  Plaintiff disputes this fact by arguing that her resignation was tendered in May 2009.  Plaintiff told her lawyer Ms. Hardaway in July 2009 that she was terminated without cause from MMHI.  (*Id*. ¶ 11).  Plaintiff denies this statement but claims that the MMHI Human Resources Director deceived her about alternatives for taking extended FMLA.  Plaintiff filed a complaint against Claudette Seymour alleging that Seymour supported and assisted Slate and Ventura in covering up their alleged discrimination.  (*Id*. ¶ 17b)  Seymour is an African-American female.  (*Id*. ¶ 18)  Ventura believes that Plaintiff should have been terminated from her employment at MMHI.  (*Id*. ¶ 65)

In the Motion before the Court, Defendants argue that there are no triable issues and that they are entitled to summary judgment as to all of Plaintiff's claims.  First, Defendants contend

that Plaintiff cannot make out a prima facie case of race discrimination.  Plaintiff cannot show that she was treated differently from similarly-situated employees who were not in a protected class.  Even if Plaintiff could make out her prima facie case, Defendants assert that they had legitimate, nondiscriminatory reasons for declining to promote Plaintiff to Administrative Assistant 1.  In her tenure at MMHI, Plaintiff had attendance problems, battled substance abuse, and at times received discipline from management.  Plaintiff has not adduced any evidence that Defendants' legitimate reasons were pretext for discrimination.  Plaintiff cannot make out her claim for hostile work environment because she cannot show that the workplace was "permeated" with discrimination.  Finally, Plaintiff cannot show that she was subjected to retaliation on account of internal grievances or complaints.

In response, Plaintiff argues that she can make out her prima facie case of discrimination.  Plaintiff contends that Defendants Slate and Ventura diluted her job duties and reassigned her to work under lower level supervisors.  The same Defendants further manipulated hiring procedures to favor white candidates for promotion.  Plaintiff alleges that work stress brought on by Defendants' discriminatory acts led to her relapse of drug and alcohol abuse.  Plaintiff's brief includes a litany of factual allegations without any further citation to the record.  For example, Plaintiff alleges that she complained to Ventura of discriminatory practices at MMHI in a 2005 email.  After that complaint, Plaintiff asserts that she had a rating of 87 on the state register as of September 2007 as compared to Cynthia Jones' rating of 82.  Plaintiff argues that a jury could infer that Defendants selected Jones for promotion in retaliation against Plaintiff.  In another example of an unsupported allegation of fact, Plaintiff also alleges that her work area was moved

to an isolated area of the basement.[3]  Plaintiff goes on to argue that Defendants' proffered nondiscriminatory reasons are not entitled to credence because they changed over time.  Plaintiff further contends that a jury should be allowed to determine the credibility of Defendants' proffered nondiscriminatory reasons for its actions.

Turning to her claim of hostile work environment, Plaintiff argues that she can make out a prima facie case for this claim based on a series of allegations, most of which are not supported in the record before the Court.  Plaintiff again asserts that she was moved to the "dingy uninhabited" basement.  Plaintiff contends that she filed a grievance in September 2007 that also put management on notice of the hostile conditions in the workplace.  Finally, Plaintiff argues that she has adduced sufficient evidence to submit her claim of retaliation to a jury.  Defendants filled positions without following established hiring and posting procedures in an effort to segregate African-American secretaries in a secretary pool and deny them promotion to the Administrative Assistant 1 classification.  Plaintiff also briefs her state law claims for negligent and intentional infliction of emotional distress.

Defendant has filed a reply brief in support of its Motion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

---

[3] Plaintiff cites a portion of her own deposition testimony but without actually attaching that portion of the record to her brief as required by Rule 56.

to a judgment as a matter of law.[4]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[5]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[6]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[7]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[8]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[9]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]  In this Circuit, "this requires the nonmoving party

---

[4] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[6] *Celotex*, 477 U.S. at 324.

[7] *Matsushita*, 475 U.S. at 586.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[9] *Id*. at 251-52 (1989).

[10] *Celotex*, 477 U.S. at 322.

to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[11]  Finally, the

"judge may not make credibility determinations or weigh the evidence."[12]  Under Federal Rule of

Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law."[13]

## ANALYSIS

As an initial matter, the Court is troubled by both parties' citation to facts which clearly

have no relevance to the resolution of this case.  For example, Defendants have included in the

record court documents naming a Patricia Gray as a criminal defendant.  Although Gray is

Plaintiff's maiden name, Plaintiff denied in her deposition that she is the Patricia Gray named in

the documents.  There was no testimony in the record from any Defendant that they had

knowledge of criminal charges against Plaintiff let alone that such charges had any bearing on

their decision not to promote her.  Thus, Defendants' citation to these records has absolutely no

relevance to this case.  Other irrelevant facts bear on Plaintiff's private medical and substance

abuse history such as when and where she first tried crack cocaine or the effects of her childhood

abuse.  For her part, Plaintiff's deposition testimony at times included allegations about the

personal life of Defendant Slate, including details about an extramarital affair, which have no

connection to the facts of this case.  The Court is at a loss to understand why both parties would

present the Court with a record containing such completely irrelevant and even scurrilous

---

[11] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[12] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[13] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

allegations.

Nevertheless, the Court holds that Plaintiff has failed to adduce evidence from which a reasonable juror could find all of the elements of her claims. Therefore, Defendants are entitled to summary judgment.

## I.      Failure to Promote Claim

First, the Court holds that Defendants are entitled to summary judgment on Plaintiff's discrimination claim for failure to promote her.[14]  In order to make out a prima facie case of discrimination based on a failure to promote, Plaintiff must prove that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time Plaintiff's request for the promotion was denied.[15]

The Court holds that Plaintiff cannot make out a prima facie case of discrimination based on Defendants' decisions not to promote her.  It is undisputed in this case that Plaintiff can establish the first three elements of her case.  Defendants argue that Plaintiff cannot establish the fourth element that Defendants prevented African-Americans generally from applying for the Administrative Assistant 1 positions.  The record indicates that two African-Americans were promoted to that classification.  The Court finds Defendants' argument inapposite here because

---

[14] Plaintiff has briefed this claim as a disparate treatment theory of discrimination. However, Plaintiff's allegations are all directed to Defendants' failure to promote her to an Administrative Assistant 1 position during her tenure.

[15] *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005) (failure to promote in sex discrimination case).

Plaintiff does not have the burden to show that no African-Americans were ever promoted to Administrative Assistant 1.  Rather Plaintiff must prove that an individual of similar qualifications who was not a member of the protected class received a job at the time Plaintiff's request for the promotion was denied.  It is this showing that Plaintiff has failed to make.

The parties have identified several individuals who were promoted or hired at the Administrative Assistant 1 classification during Plaintiff's tenure.  It is unclear whether Plaintiff applied for the same opening each time these other individuals received the position.  Two of the individuals Cynthia Jones and Myron McWashington who did receive Administrative Assistant 1 positions are African-Americans.  Thus, Plaintiff cannot show that Jones and McWashington were outside of the protected class.[16]  Accordingly, Defendants are entitled to summary judgment as to both of these hires.

Although not mentioned in Defendants' Statement of Undisputed Facts, Plaintiff has also identified two white employees, Linda Johnson and Brenda Anderson, who also were promoted or hired at the Administrative Assistant 1 classification.  Plaintiff argues that both women were hired by Defendants without following proper procedures for the hiring process.  Even if the Court accepted this allegation as true, Plaintiff has failed to adduce any evidence that she was similarly qualified to either Johnson or Anderson at the time Defendants denied her promotion.  There is evidence in the record of Plaintiff's own qualifications for the position such as her background and experience.  However, Plaintiff has failed to show what Johnson's or Anderson's respective qualifications were or that Plaintiff's qualifications were similar to those

_____

[16] The Court need not reach the issue of whether Plaintiff's name was on the state registry or that she had otherwise applied for the positions Jones and McWashington received.

12

of these women.  These comparisons are "necessary" to the Court's analysis of the fourth prong.[17]  Therefore, Plaintiff has failed to carry her burden as to this element and Defendants are entitled to summary judgment as to these two hires.

Even if Plaintiff had been able to establish her prima facie case as to Johnson or Anderson, the Court holds that Defendant has proffered a legitimate reason for its decision not to promote Plaintiff, and Plaintiff has failed to show that the reason was pretext for discrimination. Where a plaintiff meets her prima facie burden, the burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for failing to hire Plaintiff for the position sought.[18]  The Court holds that Defendants have carried their burden to produce a legitimate reason for not promoting Plaintiff.  Defendants have cited Plaintiff's substance abuse and excessive absenteeism as reasons for their decision not to promote Plaintiff.  Plaintiff does not dispute that she had problems with crack cocaine, that she confessed to Slate that she had a problem, and that at some point she was using crack on a daily basis.  Plaintiff has denied that she ever came to work while under the influence.

Viewing the evidence in the light most favorable to Plaintiff, Defendants have not established what they knew about Plaintiff's addiction to crack cocaine and alcohol or when they knew it.  However, the record is clear that Plaintiff had a significant number of absences at the different times when Johnson and Anderson received Administrative Assistant 1 positions. Although not set forth in the Statement of Undisputed Facts, the record indicates that Johnson

---

[17] *Id*. at 243.

[18] *Id*. at 244.

was hired after an Administrative Assistant 1 position was posted on December 2, 2006.[19]  It is undisputed that Plaintiff was absent from work for a total of 23.02 days in 2005 and in 2006 her number of absences rose to 49.9 days, that is, almost ten weeks.  Likewise, Anderson was hired after a job posting in October 2007 and assumed her position in January 2008.[20]  The record shows that Plaintiff was absent for at least 58 days in 2007, which amounts to almost twelve weeks of absences.[21]  Excessive absences can be a legitimate, nondiscriminatory reason for taking adverse action against an employee.[22]  There is no evidence in the record that these large numbers of missed days were related to protected leave of any kind.  Therefore, the Court holds that Defendants have met their burden to produce a legitimate, nondiscriminatory reason for declining to promote Plaintiff.

After the employer carries its burden of production, the burden shifts back to Plaintiff to show that the nondiscriminatory reason is pretextual and the true motivation for the decision was discriminatory.[23]  Plaintiff can show pretext in one of three ways: (1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the employer's conduct, or (3) by showing that the proffered reason was insufficient to

---

[19] Bledsoe Depo., 118:5-24, Nov. 30, 2009.

[20] Bledsoe Depo., 194:11-20, Nov. 30, 2009.

[21] The parties do not dispute this number.  It is not clear to the Court why Defendant also submitted an affidavit of Claudette Seymour showing that Plaintiff was absent 63.17 days in 2007.  Plaintiff also admits this allegation.

[22] *E.g. White v. Ohio*, 2 F. App'x 453, 460, 2001 WL 69186, at *6 (6th Cir. 2001).

[23] *Id.* at 245.

14

warrant the challenged conduct.[24]  The Court concludes that Plaintiff cannot make any of these showings.  First, it is undisputed that the proffered reason did have a basis in fact.  Second, Plaintiff has adduced no evidence that her excessive absences did not motivate Defendants' conduct.  Plaintiff emphasizes that Defendants failed to follow state hiring procedures and that these failures are evidence of pretext.  The Sixth Circuit has held that an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext.[25]  Finally, Plaintiff has not shown that her absences were insufficient to warrant Defendants' denials of her promotion.  To establish this type of pretext showing, an employee must normally adduce "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff."[26]  Plaintiff has failed to adduce such evidence in this case.  Therefore, even if Plaintiff could make out prima facie case of discrimination, Plaintiff has failed to show that Defendants' proffered reasons for not promoting her were pretextual.

## II.     Hostile Work Environment

Title VII prohibits discrimination that is "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment."[27]  In order to

---

[24] *Id.*

[25] *White v. Columbus Metro. Housing Auth.*, 429 F.3d at 246.

[26] *White v. Ohio*, 2 F. App'x at 460.

[27] *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

establish a prima facie case of a race-based hostile work environment, a plaintiff must

demonstrate the following elements: (1) that she is a member of a protected class; (2) that she

was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4)

that the harassment had the effect of unreasonably interfering with the plaintiff's work

performance by creating an intimidating, hostile, or offensive work environment; and (5) the

existence of employer liability.[28]  The conduct must be so severe or pervasive that a reasonable

person would find the workplace hostile or abusive, and that the victim must subjectively regard

the workplace as abusive.[29]  The Supreme Court has "made it clear that conduct must be extreme

to amount to a change in the terms and conditions of employment."[30]  Conduct that is "merely

offensive" is insufficient to support a hostile work environment claim.[31]

The Court must look at the totality of the circumstances in deciding whether a hostile

workplace existed.[32]  Appropriate factors to consider include the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance."[33]

"Isolated incidents. . ., unless extremely serious, will not amount to discriminatory changes in

---

[28] *Newman v. Fed. Express Corp.,* 266 F.3d 401, 405 (6th Cir. 2001).

[29] *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir. 2000).

[30] *Faragher v. Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

[31] *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

[32] *Hafford,* 183 F.3d at 512.

[33] *Id.* (quoting *Harris,* 510 U.S. at 23).

the terms or conditions of employment."[34]  Additionally, the law draws a distinction between harassment and harassment that is based on a plaintiff's protected status.[35]  Therefore, only incidents that occurred because of a plaintiff's race are properly considered in the context of a claim of hostile work environment.[36]

Applying these factors, the Court holds that Plaintiff cannot make out her claim for hostile work environment.  First, Plaintiff has failed to adduce any evidence to support the second and third elements of her claim, that is, Plaintiff cannot show that any of the alleged forms of harassment had anything to do with her race.  For example, Plaintiff complains that her supervisors harassed her by moving her work area to the basement of the building, by failing to complete her annual performance reviews for several years, by disciplining her for minor infractions, and by placing her at the bottom of an organizational chart.  Most of Plaintiff's examples of harassment are supported only by her own testimony and nothing else.[37]  Even accepting all of these allegations as true, none of the alleged harassment is facially racial or included any specific reference to Plaintiff's race.  There is no evidence that any individual Defendant ever made a racial remark to Plaintiff or about Plaintiff.  Therefore, the Court holds that none of these incidents could properly form the basis for her claim of a hostile work environment because they do not constitute racial harassment.

---

[34] *Bowman,* 220 F.3d at 463.

[35] *Howard v. Bd. of Educ. of Memphis City Schs.*, 70 F. App'x 272, 282, 2003 WL 21518725, at *8 (6th Cir. 2003).

[36] *Id.* (citations omitted).

[37] Some of Plaintiff's claims are not even supported in the record before the Court such as her contention that management instructed security to watch Plaintiff's car.

17

Furthermore, the Court holds that Plaintiff cannot establish that Defendants' alleged harassment unreasonably interfered with Plaintiff's work performance by creating an intimidating, hostile, or offensive work environment.  Even if the Court accepted Plaintiff's allegations that these acts were racially motivated, the acts at issue are the sort of "isolated incidents" that "will not amount to discriminatory changes in the terms and conditions of employment."  Plaintiff has failed to show when most of the alleged conduct occurred, for instance, when her work area was relocated to the basement or when her position was moved on the MMHI organizational chart.[38]  Although either event would arguably be embarrassing to a reasonable employee, Plaintiff has failed to demonstrate that these events occurred so frequently as to be severe or pervasive.[39]  Plaintiff primarily alleges that Defendants' segregation of African-Americans in the secretary pool and refusal to promote them to Administrative Assistant 1 positions resulted in a hostile work environment.  However, the record before the Court discloses only four individuals who received such positions over a span of six years, two of whom were African-Americans.[40]  It could hardly be said then that Defendants' alleged failure to promote African-Americans from the secretarial pool was so frequent, severe, physically

---

[38] *Fuelling v. New Vision Med. Labs., LLC*, 284 F. App'x 247, 259-260, 2008 WL 2604280, at *12 (6th Cir. 2008).

[39] The briefs mention that Plaintiff felt that Defendants sometimes harassed her because of her faith as a Jehovah's Witness.  However, these incidents appear to be so isolated that they could not constitute a hostile work environment as a matter of law.

[40] *Bourini v. Bridgestone/Firestone North American Tire, LLC*, 136 F. App'x 747, 751, 2005 WL 712881, at *4 (6th Cir. 2005) (eight acts spread over five years too isolated to create hostile environment);  *Marshall v. Fed. Express Corp.,* 12 F. App'x 186 (6th Cir. 2000) (alleged acts over four years too isolated).

threatening, or humiliating as to unreasonably interfere with Plaintiff's work performance. The Court finds that Plaintiff has failed to adduce evidence from which a juror could conclude that the environment at MMHI was objectively hostile.  Therefore,  Defendants' Motion for Summary Judgment as to this claim is granted.

**III.     Retaliation**

Plaintiff has alleged that Defendants retaliated against her because of her complaints of racial discrimination at MMHI.  In order to make out a prima facie case of retaliation, Plaintiff must demonstrate (1) that she engaged in protected conduct; (2) that Defendant had knowledge of her protected activity; (3) that Defendant took an adverse employment action against her; and (4) that there was a causal connection between the protected activity and the adverse employment action.[41]  Plaintiff has alleged that she complained by internal email to Ventura about the hiring process for an Administrative Assistant 1 position in 2005 and suggested that he was discriminating against her if he hired either of two other candidates who had been promised the job.[42]

Although Plaintiff has failed to produce the email itself, the Court finds that taking the evidence in a light most favorable to her, Plaintiff can show that she engaged in protected activity.  Protected activity may include either participation in any proceeding under Title VII (the so-called "participation clause") or opposition to a practice declared discriminatory under

---

[41] *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

[42] Plaintiff fails to properly cite to this portion of the record in her brief.  However, the Court finds that the allegation is supported in her deposition testimony, Bledsoe Depo., 139:15-140:4, Nov. 30, 2009.

Title VII (the "opposition clause").[43]  Under Title VII's opposition clause, an employee is

protected against employer retaliation for opposing any practice that the employee reasonably

believes to be a violation of Title VII.[44]  The opposition clause makes it "unlawful ... for an

employer to discriminate against any ... employe[e] ... because he has opposed any practice made

... unlawful ... by this subchapter."[45]  The EEOC has identified a number of examples of

"opposing" conduct which is protected by Title VII, including complaining to anyone

(management, unions, other employees, or newspapers) about allegedly unlawful practices;

refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing

unlawful acts by persons other than the employer, e.g., former employers, union, and co-

workers.[46]  The EEOC has qualified the scope of the opposition clause by noting that the manner

of opposition must be reasonable, and that the opposition must be based on "a reasonable and

good faith belief that the opposed practices were unlawful."[47]  In other words, a violation of Title

VII's retaliation provision can be found whether or not the challenged practice ultimately is

found to be unlawful.[48]  It is not necessary for a plaintiff to prove active, consistent "opposing"

---

[43] The participation clause is not implicated in this case because Plaintiff did not file an
EEO charge in 2005.  To establish a claim of retaliation under the participation clause, Plaintiff
must show that Defendant took an adverse action against her because she filed an EEO claim.
*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 581(6th Cir. 2000).

[44] *Johnson*, 215 F.3d at 579-80.

[45] 42 U.S.C.A. § 2000e-3(a).

[46] *Id*. (citing *EEOC Compliance Manual,* (CCH) ¶ 8006).

[47] *Id*.

[48] *Id*.

activities to warrant protection against retaliation.[49]

The Court finds that Plaintiff's email to Ventura about the discriminatory impact of his failure to post the job opening and follow state hiring procedures as protected activity under Title VII's opposition clause.  However, Plaintiff cannot make out all of the elements of her prima facie case, specifically a causal connection between her protected activity and an adverse action against her.   The Court assumes only for purposes of this analysis that Plaintiff can establish that Ventura was aware of her email complaint and that her discipline in March 2006 was an adverse action.  However, the Court holds that Plaintiff cannot establish a causal connection between her protected activity and an adverse action.  In order to establish this element, Plaintiff "must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity.[50]  Where there is no direct proof of retaliatory intent, temporal proximity together with other circumstantial evidence may establish the causal connection.[51]  Temporal proximity alone is not sufficient.[52]

The Court holds that Plaintiff has failed to adduce evidence of a causal connection between her protected activity and the earliest alleged incident of retaliation, a written reprimand for disclosing a performance review to an employee.  It appears that Plaintiff made her email

---

[49] *Crawford v. Metropolitan Gov't of Nashville & Davidson County, Tenn.*, 129 S.Ct. 846 (2009)*, abrogating Bell v. Safety Grooving & Grinding, LP*, 107 F. App'x 607, 610 (6th Cir. 2004).

[50] *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

[51] *Id.*

[52] *Arendale v. City of Memphis*, 519 F.3d 587, 606-607 (6th Cir. 2008).

complaint to Ventura some time "after the end of 2005."[53]  Plaintiff received the written

reprimand from Slate in March 2006.  Other than the temporal proximity of at least three

months, Plaintiff has failed to point to any other evidence of retaliatory intent.  Thus, the

temporal proximity of her email to Ventura and her March 2006 reprimand without further proof

of retaliatory motive is not enough.  As with her other claims, Plaintiff has alleged a litany of

retaliatory acts that followed her 2005 email complaint.  However, some of these acts occurred

months and years after her 2005 email to Ventura.  As a result, Plaintiff cannot show that these

acts had the requisite proximity in time to her protected activity.  Therefore, the Court holds that

Plaintiff cannot make out her prima facie case of retaliation because she cannot demonstrate a

causal connection between her protected activity and any of the alleged retaliatory acts.

Although Plaintiff has based her claim of retaliation on the 2005 email to Ventura, the

record shows that Plaintiff made other complaints about discriminatory practices at MMHI,

which could arguably qualify as a protected activity.  For example, Plaintiff testified in her

deposition that she complained about the hiring of Brenda Anderson in a series of emails in

October 2007.[54]  Even if the Court accepted that Plaintiff could make out her prima facie case as

to the 2005 email to Ventura or the October 2007 complaints, the Court finds that Defendant had

a legitimate, nondiscriminatory reason for its actions and Plaintiff cannot show that they were

pretextual.  Generally, Defendant has stated that it did not consider Plaintiff for the various

---

[53] Bledsoe Depo., 139:22-24, Nov. 30, 2009.

[54] Bledsoe Depo., 197:4-198:6, Nov. 30, 2009.  Also the record indicates that in December 2008, Plaintiff filed a complaint against Claudette Seymour.  That complaint stated that the date of the earliest occurrence of events reported in the complaint was June 16, 2008.  Pl.'s Resp. Opp'n, ex. 12, ("Bledsoe Grievance"), 1.

openings at the Administrative Assistant 1 classification because of Plaintiff's excessive absences.  The Court holds that this is a legitimate, nondiscriminatory reason.  With respect to the March 2006 reprimand specifically, Plaintiff was disciplined for disclosing a performance evaluation with an MMHI employee before that employee was given the evaluation by her supervisor.  The Court finds that this is likewise a legitimate, nondiscriminatory reason for Slate's decision to reprimand Plaintiff.

The burden now shifts back to Plaintiff to demonstrate that Defendant's proffered legitimate reasons are pretext for retaliation.  Plaintiff must introduce evidence to create a genuine issue of material fact that (1) the defendant's stated reasons had no basis in fact, (2) the stated reasons were not the actual reasons, or (3) the stated reasons were insufficient to explain the defendant's actions.[55]  The Court has already concluded that Plaintiff cannot establish that Defendants' proffered reason, her excessive absences, was pretext for denying her promotion.  Likewise, the Court holds that Plaintiff cannot establish that her absences were pretext for unlawful retaliation.  With respect to the March 2006 reprimand, Plaintiff admits that she did actually disclose the evaluation to the other employee and that she was not forthcoming about it with Slate.  The stated reasons thus had a basis in fact.  Nor has Plaintiff adduced any evidence that the stated reason for the reprimand was not the actual reason or that the stated reason was insufficient to explain the reprimand.  Therefore, even if Plaintiff could establish her prima facie case of retaliation, Plaintiff cannot carry her burden to adduce evidence that Defendants' proffered reasons are pretext.

Having concluded that Plaintiff cannot make out her prima facie case or prove that

---

[55] *Johnson,* 215 F.3d at 573.

Defendant's proffered reasons are pretext, the Court grants Defendants summary judgment as to this claim.

## IV.    State Law Claims

Plaintiff has alleged additional claims of negligent and intentional infliction of emotional distress pursuant to Tennessee law.  The Court has original jurisdiction pursuant to 28 U.S.C.A. § 1331 over the federal law claims in this case, namely, Plaintiff's Title VII claims.[56]  Where the Court has original jurisdiction, the Court may exercise its supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.[57]  The Court is vested with the further discretion to decline to exercise supplemental jurisdiction under certain circumstances.[58]  These include instances when "the district court has dismissed all claims over which it has original jurisdiction."[59]  Generally, if a federal claim is dismissed before trial, the state claim should be dismissed as well.[60]  Therefore, Plaintiff's state law claims are dismissed.

## CONCLUSION

Plaintiff has failed to state any of her claims under Title VII.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

---

[56] 28 U.S.C.A. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

[57] 28 U.S.C. § 1367(a).

[58] 28 U.S.C. § 1367(c).

[59] 28 U.S.C. § 1367(c)(1) & (3).

[60] *Taylor v. First of Am. Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992).

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: April 16th, 2010.